UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| LANIER THOMPSON, #726007, | |
| Plaintiff, | Case No. 1:13-cv-167 |
| v. | Honorable Robert Holmes Bell |
| KEVIN ZWIKER, et al., | **REPORT AND RECOMMENDATION** |
| Defendants. | |

This is a civil rights action brought *pro se* by a state prisoner under 42 U.S.C. § 1983. Plaintiff's complaint arises from two instances of alleged mishandling of his mail at the Ionia Maximum Correctional Facility (ICF). The defendants are employees of the Michigan Department of Corrections (MDOC) at ICF: Sergeant Kevin Zwiker and Assistant Resident Supervisor (ARUS) Robert Ault. Plaintiff alleges that on or about January 16, 2013, defendant Zwiker violated his First Amendment rights by opening incoming mail outside his presence. He alleges that on February 6, 2013, defendant Ault violated his First Amendment rights by mishandling outgoing mail. Plaintiff seeks an award of damages and injunctive relief.

The matter is before the court on defendants' motion for summary judgment based on the affirmative defense provided by 42 U.S.C. § 1997e(a). (docket # 20). Plaintiff has filed his response. (docket # 24). I recommend that plaintiff's claims for injunctive relief be dismissed as moot. I further recommend that defendants' motion for summary judgment be granted and that all plaintiff's claims for damages be dismissed without prejudice.

## Applicable Standards

### A. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Sadie v. City of Cleveland*, 718 F.3d 596, 599 (6th Cir. 2013). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). The court must draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adams v. Hanson*, 656 F.3d 397, 401 (6th Cir. 2011).

A party asserting that a fact cannot be genuinely disputed must support the assertion as specified in Rule 56(c)(1). FED. R. CIV. P. 56(c)(1). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e)(2), (3); *see El-Seblani v. IndyMac Mortg. Servs.*, 510 F. App'x 425, 427 (6th Cir. 2013). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990). "A mere scintilla of evidence is insufficient; 'there must be

evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see Davis v. Cintas Corp.*, 717 F.3d 476, 491 (6th Cir. 2013).

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). The moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Court of Appeals has repeatedly emphasized that the party with the burden of proof faces "a substantially higher hurdle" and "'must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000)); *see Surles v. Andison*, 678 F.3d 452, 454-56 (6th Cir. 2012); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). This higher standard applies to defendants' motion. *See Surles*, 678 F.3d at 455-56.

**B.     Standards Applicable to the Affirmative Defense of Failure to Exhaust Remedies**

Defendants have asserted the affirmative defense of plaintiff's failure to exhaust administrative remedies. A prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. 42 U.S.C. § 1997e(a); *see Jones v. Bock*, 549 U.S. 199, 220 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 734. "This requirement is a strong one. To further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the remedy is not available, even when the state cannot grant the particular relief requested, and even where the prisoner[] believes the procedure to be ineffectual or futile." *Napier v. Laurel County, Ky.*, 636 F.3d 218, 222 (6th Cir. 2011) (internal quotations and citations omitted).

In *Jones v. Bock*, the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." 549 U.S. at 216. The burden is on defendants to show that plaintiff failed to properly exhaust his administrative remedies. The Supreme Court reiterated that "no unexhausted claim may be considered." 549 U.S. at 220. The Court held that when a prisoner complaint contains both exhausted and unexhausted claims, the lower courts should not dismiss the entire "mixed" complaint, but are required to dismiss the unexhausted claims and proceed to address only the exhausted claims. 549 U.S. at 219-24.

In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules

established by state law. *Jones v. Bock*, 549 U.S. at 218-19. In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held that the PLRA exhaustion requirement "requires proper exhaustion." 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90; *see Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009). Thus, when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the prisoner's claim is not "properly exhausted" for purposes of filing a § 1983 action in federal court. 548 U.S. at 90-93; *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011); *see* 42 U.S.C. § 1997e(a). The procedural bar does not apply where the State declines to enforce its own procedural rules. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010).

MDOC Policy Directive 03.02.130 (effective July 9, 2007) sets forth the applicable grievance procedures.[1] In *Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir. 2009), the Sixth Circuit held that this policy directive "explicitly required [the prisoner] to name each person against whom he grieved," and it affirmed the district court's dismissal of a prisoner's claim for failure to properly exhaust his available administrative remedies. *Id.* at 470.

Policy Directive 03.02.130 is not limited to the requirement that the individual being grieved be named in the Step I grievance. The following is an overview of the grievance process. Inmates must first attempt to resolve a problem within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his control. *Id.* at ¶ P. If the mandatory pre-grievance attempt at resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted resolution. *Id.* The Policy Directive also provides the following directions for completing Step I

---

[1] A copy of the policy directive is found in the record. *See* docket # 21-2, ID#s 90-96.

grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the *facts* involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). Thus, where an individual is not named in the Step I grievance, or his or her involvement in the issue being grieved is not indicated, or the individual is mentioned for the first time during an appeal of a denial of a grievance, the claims against that individual are not properly exhausted. *See Ketzner v. Williams*, No. 4:06-cv-73, 2008 WL 4534020, at * 16 (W.D. Mich. Sept. 30, 2008) (collecting cases); *accord Sullivan v. Kasajaru*, 316 F. App'x at 470.

The inmate submits the grievance to a designated grievance coordinator who makes an initial determination whether it should be rejected under MDOC policy or assigns it to a respondent. P.D. 03.02.130 at ¶¶ W, X. If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. The respondent at Step II is designated by the policy. The Step II respondent is generally the warden or the warden's designee. *Id.* at ¶ DD. If the inmate is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶ FF. The Step III appeal form must be sent to the Grievance and Appeals Section within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the Step III respondent. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ S. "The total grievance process from the point of filing a Step I grievance to providing a Step III

response shall generally be completed within 120 calendar days unless an extension has been approved in writing." *Id.*

Ordinarily, a prisoner must pursue appeals of his grievance through Step III of the administrative process. The Sixth Circuit has "clearly held that an inmate does not exhaust available administrative remedies when the inmate fails entirely to invoke the grievance procedure." *Napier*, 636 F.3d at 224. An argument that it would have been futile to file a grievance does not suffice. Assertions of futility do not excuse plaintiff from the exhaustion requirement. *See Napier*, 636 F.3d at 224; *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) ("[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations."); *see also Booth v. Churner*, 532 U.S. at 741 n. 6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

**Proposed Findings of Fact**

The following facts are beyond genuine issue. Plaintiff is an inmate held in the custody of the Michigan Department of Corrections. He was an inmate at the Ionia Maximum Correctional Facility (ICF) in January and February 2013. In March 2013, he was transferred to the Marquette Branch Prison (MBP), his present place of confinement. (docket # 7).

On January 16, 2013, plaintiff received an envelope from the Department of Justice (DOJ) that someone had opened outside his presence.[2] (Compl. at ID# 3). The envelope from the

---

[2]Plaintiff's complaint is verified under penalty of perjury. It is considered as an affidavit in opposition to defendants' motion for summary judgment. *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992). However, "verified"

DOJ did not indicate that any type of special handling was required. (docket # 1-1, ID# 14). The enclosed form letter (*Id.* at ID# s 15-16) stated that plaintiff's correspondence had been received. It related that the DOJ's Special Litigation Section "only handle[d] cases that ar[ose] from widespread problems that affect groups of people" and that it did not handle "individual problems." Plaintiff states a conclusion that defendant Zwiker opened the envelope and read the letter outside his presence. (Compl. at ID# 3). Plaintiff's complaint is not a model of clarity, but he appears to base his conclusion that Zwiker opened this mail outside his presence on a conversation they purportedly had two days earlier. According to plaintiff, Zwiker stated: "I have legal mail for you[.] It was two letters but I lost one[.]  It may be in another unit[.] I may find it for you in a few days[.] You may get it in the mail." (*Id.* at ID# 3).

On February 6, 2013, defendant Ault approved a disbursement of $0.86 for postage on an item of oversized outgoing mail. (docket # 1-1, ID# 19). According to plaintiff, on February 8, 2013, Ault came to his cell and stated that plaintiff "depended on his Momma to protect [him]," and that he had read and not mailed plaintiff's letter. (Compl. at ID# 4).

Although plaintiff filed other grievances at ICF and pursued them through Step III of the MDOC's grievance process, none of those grievances relate to the alleged mishandling of mail at issue in this lawsuit. (docket # 21-3, ID#s 98-100). Plaintiff states that he was on grievance restriction. (Compl. at ID# 3). He named the ICF's grievance coordinator as a defendant and states

---

arguments and legal conclusions are not evidence. Legal conclusions, whether asserted in an affidavit or verified complaint, do not suffice to create a genuine issue of material fact for trial. *See Medison Am. Inc. v. Preferred Med. Sys., Inc.*, 357 F. App'x 656, 662 (6th Cir. 2009); *see also Stine v. State Farm Fire & Cas. Co.*, 428 F. App'x 549, 550 (6th Cir. 2011) (A "conclusory affidavit bypasses the specific-facts requirement of Federal Rule of Civil Procedure 56 necessary to forestalling summary judgment.").

that the grievance coordinator failed or refused to provide him with grievance forms that he had requested.³ (Compl. at ID#s 3; docket # 24, ID# 108). On February 12, 2013, long before any grievance regarding the mail-handling incidents at issue in this case could have been pursued through Step III decisions, plaintiff filed this lawsuit.⁴

**Discussion**

1. Mootness

Plaintiff is an inmate at MBP. Defendants are employed by the State of Michigan at ICF. Plaintiff's claims for injunctive relief against the defendants are moot. *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

2. Exhaustion

Defendants seek dismissal of plaintiff's claims based on the affirmative defense provided by 42 U.S.C. § 1997e(a). It is undisputed that plaintiff did not file any grievance against defendants or pursue those grievances through Step III of the MDOC's grievance process. While plaintiff was on modified access to the grievance process, he was required to present his proposed grievance to the grievance coordinator. *See* P.D. 03.02.130 ¶ KK, docket # 21-1, ID# 95. Significantly for present purposes, modified access is a temporary limitation on a prisoner's access to grievance forms in response to documented abuses. (*Id.* at ¶¶ HH-LL, ID#s 95-96). It does not

---

³All plaintiff's claims against ICF's grievance coordinator were dismissed on March 14, 2013. (docket # 5).

⁴I have given plaintiff the benefit of the "mailbox rule" based on the date he signed his complaint. (docket # 1, ID# 6). The court received plaintiff's complaint on February 14, 2013, a mere two days after he signed it.

render the grievance process unavailable. *See Johnson v. Schiebner*, No. 1:12-cv-486, 2013 WL 1080295, at * 6 (W.D. Mich. Feb. 13, 2013).

A prisoner cannot be permitted to make the MDOC's grievance system unavailable through his own abuse of the system. Any contrary approach would produce the absurd result of encouraging prisoners to abuse the grievance process in order to be placed on grievance restriction and thereby obtain the substantial reward of a quick and easy method of getting around the PLRA's entire statutory exhaustion requirement. In this way, prisoners could avoid the very real inconvenience of committing themselves to a specific written statement of the facts surrounding any incident, identifying the individual or individuals involved, and providing the MDOC with an opportunity to address the issue before the matter ended up in federal court. In *Woodford v. Ngo*, the Supreme Court considered the significant incentives that prisoners have for trying to get around the PLRA's statutory exhaustion requirement and observed that a "prisoner who does not want to participate in the grievance system [would] have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction." 548 U.S. at 95. The Court was "confident that the PLRA did not create such a toothless scheme." *Id.* Thus, the Supreme Court adopted the "proper exhaustion" standard. *Id.* at 93.

Here, plaintiff was transferred to MBP in March 2013. Assuming that ICF's grievance coordinator somehow thwarted plaintiff's attempt to file a grievance, plaintiff would have had upon transfer, and may yet still have, an opportunity to properly exhaust his available administrative remedies. *See Arrington v. Scott*, No. 1:12-cv-529, 2013 WL 1080296, at * 2 (W.D. Mich. Mar. 14, 2013) ("It was incumbent upon plaintiff upon his transfer [] to file grievances corresponding to all the claims he is now asserting against defendants, including the explanations

documenting his reasons for the delayed filing of each grievance, and to pursue all those grievances through Step III decisions."). Plaintiff does not assert that he was on grievance restriction at his new prison. Under paragraph G(4) of the Policy Directive, an otherwise untimely grievance will not be rejected "if there is a valid reason for the delay." (P.D. 03.02.130 ¶ G(4), docket # 21-2, ID# 91). Assertions of futility do not excuse plaintiff from the exhaustion requirement. *See Napier*, 636 F.3d at 224; *Hartsfield v. Vidor*, 199 F.3d at 309.

What is pellucid on the present record is that it was impossible for plaintiff to have initiated grievances against defendants and pursued those grievances through Step III decisions in the few days or weeks that elapsed between the alleged wrongful conduct by defendants and the filing of this lawsuit. Naming the prison's grievance coordinator as a defendant and accusing that individual of mishandling requests for grievance forms does not yield an express pass around the PLRA's statutory exhaustion requirement.

Exhaustion is mandatory. *Woodford*, 548 U.S. at 85. "[N]o unexhausted claim may be considered." *Jones v. Bock*, 549 U.S. at 220. Plaintiff did not file and pursue any grievance against defendants through Step III of the MDOC's grievance process before filing this lawsuit Plaintiff did not properly exhaust any claim against defendants. *See Woodford*, 548 U.S. at 90, 93; *Siggers*, 652 F.3d at 692.

**Recommended Disposition**

For the foregoing reasons, I recommend that plaintiff's claims for injunctive relief be dismissed as moot. I further recommend that defendants' motion for summary judgment (docket

# 20) be granted and that all plaintiff's claims for damages against defendants Zwiker and Ault be dismissed without prejudice.

Dated: September 17, 2013 /s/ Joseph G. Scoville
United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).